## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**RADAIR, LLC,**

      **Plaintiff,**

**v.**                                  **No. 2:20-CV-02286-MSN-cgc**

**ALASKA AIRLINES, INC., and**
**MCGEE AIR SERVICES, INC.,**

      **Defendants.**

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT
## REGARDING PUNITIVE DAMAGES

---

COME NOW Defendants Alaska Airlines, Inc. ("Alaska Airlines") and McGee Air Services, Inc. ("McGee"), by and through their counsel of record, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.01 of this Court's Local Rules, and submit their Memorandum of Law in Support of their Motion for Partial Summary Judgment Regarding Punitive Damages.

### I.      BACKGROUND AND PROCEDURAL HISTORY

This is a property damage case. Plaintiff's Amended Complaint pleads three (3) Counts. [ECF No. 27]. Counts II and III both sound in simple negligence and are made against Alaska Airlines, only. *Id.* at 8, 9. Neither Count II nor Count III states a claim for punitive damages. Plaintiff asks for punitive damages pursuant only to Count I, titled "Negligence," and Count I makes only passing reference to the facts on which Plaintiff's entire claim for punitive damages purportedly arises. *See id.* at ¶ 39 ("In addition, Defendants acts and/or omissions that caused the

Incident were intentional or reckless, thereby entitling RadAir to punitive damages.  Accordingly, RadAir demands that it be awarded punitive damages to be paid by Defendants.").[1]

In their Answers to Plaintiff's Amended Complaint, McGee conceded liability for negligence and denied liability for punitive damages.  [ECF No. 29].  Alaska Airlines denied liability outright.  [ECF No. 28].

Although McGee requested in written discovery the facts and evidence supporting Plaintiff's claim for punitive damages, Plaintiff's Responses referred only to Defendants' discovery responses, provided no responsive information or materials, and stated Plaintiff would supplement its Responses as discovery progressed.  *See* Answer to Interrogatory No. 9, <u>Plaintiff's Responses to McGee's First Set of Written Discovery</u>, Apr. 16, 2021 (excerpts attached hereto as Exhibit A).  To date, Plaintiff has not supplemented its discovery responses.  On April 30, 2021— two weeks after Plaintiff served its written discovery responses—fact discovery closed.  [ECF No. 41].

Through its briefing on Defendants' first Motion for Partial Summary Judgment,[2] Plaintiff has asserted that Tennessee law governs its punitive damages claim, with California as a possible alternative.  Plaintiff's primary contention appears to be that Tennessee law should govern its punitive damages claim because the injury for which Plaintiff seeks compensatory damages was felt by Plaintiff (a Nevada resident) in Tennessee and Alaska Airlines (but not McGee) listed an address in Nashville with the Tennessee Secretary of State.  In support of its punitive damages claim, Plaintiff highlights only tangential documents (as Plaintiff took no fact witness depositions

---

[1] Out of an abundance of caution and given the overlap among all three Counts in its Amended Complaint, Defendants will treat all of Plaintiff's allegations as seeking punitive damages and not as if Plaintiff tethered its request for punitive damages to Count I only.

[2] Many of the objections Plaintiff voiced in its Response in Opposition and Sur-Reply to Defendants' first Motion for Partial Summary Judgment are pretermitted by virtue of the Court's instruction that Defendants refile the instant Motion.  Defendants address only those sparing objections Plaintiff raised to the substance of the issues presented herein, namely choice-of-law and lack of factual support for punitive damages.

in this case) in a vain attempt to substantiate vague allegations of recklessness or malice by one or more Defendants either directly or vicariously.  [ECF Nos. 34, 57].

This is Defendants' second Motion for Partial Summary Judgment regarding Plaintiff's claim for punitive damages.  After Plaintiff filed a second Concise Statement of Additional Material Facts with its Sur-Reply, unduly entangling the record, the Court denied without prejudice Defendants' first Motion for Partial Summary Judgment and instructed Defendants to submit the instant motion.  [ECF No. 68].

## II.   <u>UNDISPUTED MATERIAL FACTS</u>

McGee has admitted liability for compensatory (property) damages arising from the subject incident.  <u>Defendants' Statement of Undisputed Materials Facts in Support of Their Second Motion for Partial Summary Judgment Regarding Punitive Damages</u>, at ¶ 1 (July 30, 2021) (filed contemporaneously herewith).

Alaska Airlines is incorporated in Alaska, and its principal place of business and corporate headquarters is located in Seattle, Washington, where its corporate officers direct and coordinate its corporate activity.  *Id.* at ¶¶ 2–4.  Alaska Airlines is registered with the Tennessee Department of State as a ***Foreign*** For-profit Corporation.  *Id.* at ¶ 5.  McGee is incorporated in Delaware, and its principal place of business is located in Renton, Washington, where its corporate officers direct and coordinate its corporate activity.  *Id.* at ¶¶ 6–8.  McGee is a wholly owned subsidiary of Alaska Airlines.  *Id.* at ¶ 9.

Marcel Taylor, Daniel Foots, and Dominique Belton were the McGee employees assigned to the McGee ground crew that was working around the time of the incident alleged in Plaintiff's Amended Complaint.  *Id.* at ¶ 10.  None of these three employees was ever involved in a similar, previous incident, and nothing in their respective employment files indicates that any was unfit to

work on the ground crew or operate air stairs.  *Id.* at ¶¶ 11–12.  Prior to the incident, it was McGee's practice to remind the members of its ground crews to secure all equipment after they finished with the equipment, which included setting the brakes on the subject air stairs.  *Id.* at ¶ 13.

No McGee employee intended for the subject incident to occur.  *Id.* at ¶ 14.

### III.   APPLICABLE LAW

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).  The movant can meet this burden by demonstrating that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case.  *See Street v. J.S. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondents must set forth sufficient facts showing that there is a genuine issue for trial.  A genuine issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movants must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B. Choice of Law and Dépaçage**

As subject matter jurisdiction in this tort case is based upon diversity of citizenship, Tennessee's choice-of-law rules govern.  *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir. 1990); *Kines v. Ford Motor Co.*, No. 1:19-cv-01054-JDB-jay, 2020 WL 5550396, at *2 (Sept. 16, 2020) ("In actions arising from diversity jurisdiction, courts are to apply the choice-of-law rules of the forum state, including those involving tort claims.").  Tennessee applies the "most significant relationship" test to resolve choice-of-law issues in tort cases.  *Id.*  Under that test, the court will apply the law of the state where the injury occurred unless some other state has a more significant relationship to the litigation.  *Gov't Employees. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *28 (Tenn. Ct. App. June 29, 2007).

Like many jurisdictions, Tennessee follows the Rule of Dépaçage.  *Kines*, 2020 WL 5550396, at *2.  This Rule provides, for example, that "there is no inconsistency in applying the law of one state to a particular issue (such as compensatory claims) and the law of a different state to another issues (such as punitive damages claims)."  *Id.* (quoting *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 951 (M.D. Tenn. 2013), *aff'd* 786 F.3d 491 (6th Cir.)).

Accordingly, this Court sitting in diversity jurisdiction should contemplate which state's substantive law governs Plaintiff's punitive damages claim separate and apart from the law that governs Plaintiff's compensatory damages claim.  To that end, the three-part analytical framework this Court articulated in the recent and procedurally analogous *Kine v. Ford Motor Company* decision is particularly instructive:

> [1] Before proceeding with the choice-of-law analysis, courts must address whether there is an actual conflict between the laws of the interest states with respect to punitive damages.
>
> ***

[2] The choice-of-law analysis instructs the Court to next consider the policies behind the laws of the interest states and the interests of those states in the claim under Restatement (Second) of Conflict of Law § 6.

\*\*\*

[3] Finally, the Court is to examine the contacts set forth in the Restatement (Second) of Conflict of Laws § 145 and *Hataway [v. McKinley*, 830 S.W.2d 53 (Tenn. 1992)] in light of the foregoing policy considerations.

*Id.* at \*3–4 (internal quotation marks and citations omitted).

Under the second step, the various policies and interests of the states to be considered under § 6 of the Restatement include, "needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied." *Id.* at \*3 (quoting Restatement (Second) of Conflict of Laws § 145 cmt. b (1971)).

Under the third step, the contacts under Restatement §145 and Tennessee law include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (quoting Restatement (Second) of Conflict of Laws, § 145(2)).  More specifically to punitive damages, however, "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located." *Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 706 (W.D. Tenn. 2006).  By contrast, "[t]he place where the injury occurred and where the parties' relationship is centered do not claim as great an interest in the punitive damages issue as in other tort-related

issues." *Kines*, 2020 WL 5550396, at *4 (quoting *Williams v. Novartis Pharms. Corp.*, 15 F. Supp. 3d 761, 766 (S.D. Ohio 2014)).

### C. Washington Law on Punitive Damages

Washington does not allow punitive damages in tort cases. *Wilmotte v. Nat'l R.R. Passenger Corp.*, No. C18-0086 BHS, 2019 WL 3767133, at *2 (W.D. Wash. Aug. 9, 2019) ("Under Washington tort law . . . punitive damages are not allowed."); *Dailey v. N. Coast Life Ins. Co.*, 919 P.2d 589, 590 (Wash. 1996) ("Since its earliest decisions, this court has consistently disapproved of punitive damages as contrary to public policy."); *Essig v. Keating*, 158 Wash. 443, 444 (1930) ("In this state, exemplary or punitive damages are not recoverable . . . .").

As the Supreme Court of Washington explained long ago, "punitive damages cannot be allowed on the theory that it is for the benefit of society at large, but must logically be allowed on the theory that they are for the sole benefit of the plaintiff who has already been fully compensated, a theory which is repugnant to every sense of justice." *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45, 54 (1891); *see also Dailey*, 919 P.2d at 590 ("Punitive damages not only impose on defendant a penalty generally reserved for criminal sanctions, but also award plaintiff a windfall beyond full compensation.").

Cases analyzing conflicts between Washington and other states' laws have found that Washington's interest in not allowing punitive damages is "substantial." *See, e.g., Gould v. Aerospatiale Helicopter Corp.*, No. CS-91-341-FVS, 1993 WL 475529, at *3 (E.D. Wash. Apr. 15, 1993) ("In view of Washington's ***strong policy*** of not allowing punitive damages except when authorized by statute and the full compensation that is allowed in Washington's wrongful death claims, the Court finds that Washington's policy concerns in not allowing punitive damages in this case are ***substantial***.") (emphasis added).

7

### D. California Law on Punitive Damages

California punitive damages law is controlled by statute, which provides, in relevant part:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3294 (1992).

"The evidence must be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind.   The clear and convincing standard for punitive damages under California law applies to every stage of the litigation process, including summary judgment." *Yowan Yang v. ActioNet, Inc.*, No. CV 14-00792-AB (SHX), 2015 WL 13310407, at *13 (C.D. Cal. Dec. 30, 2015) (citation and quotation marks omitted).

California law instructs the Court to contemplate a plaintiff's heightened burden to prove punitive damages in the context of summary judgment:

> [W]here the plaintiff's ultimate burden of proof will be by clear and convincing evidence, the higher standard of proof must be taken into account in ruling on a motion for summary judgment or summary adjudication, since if a plaintiff is to prevail on a claim for punitive damages, it will be necessary that the evidence presented meet the higher evidentiary standard.
> ***
> [P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness.

*Pac. Gas & Elec. Co. v. Super. Court,* 24 Cal. App. 5th 1150, 1159, 1170 (2018), *as modified on denial of reh'g* (July 26, 2018), *rev. denied* (Oct. 17, 2018).

The justification behind California's punitive damages jurisprudence is to "avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary *respondeat superior* liability from corporate liability for punitive damages."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999).  Borrowing from the Supreme Court of Indiana, California courts have commented:

> Punitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness.  Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n. 14 (1994) (quoting *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 362 (Ind. 1982)); *Pac. Gas & Elec. Co.*, 24 Cal. App. 5th at 1170 (same).

**E. Tennessee Law on Punitive Damages**

Tennessee allows punitive damages only upon a showing by clear and convincing evidence that the defendant engaged in intentional, fraudulent, malicious, or reckless action.  *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) ("[B]ecause punitive damages are to be

awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence."). The clear and convincing evidence standard requires plaintiffs to present "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at 901 n. 3; *see also Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 193 (Tenn. Ct. App. 2008) ("A motion for partial summary judgment is an appropriate way to challenge a claim for punitive damages.").

As this Court has noted, "[i]n *Hodges*, Tennessee's seminal case on punitive damages, the Tennessee Supreme Court explained that the purpose of punitive damages is to 'punish the defendant and deter others from like offenses' and should be awarded only in cases involving the 'most egregious of wrongs.'" *Kines*, 2020 WL 5550396, at *3 (quoting *Hodges*, 833 S.W.2d at 900–01 (referring to punitive damages as a deterrent for "truly reprehensible conduct")). Simple negligence does not warrant an award of punitive damages. *See Hodges*, 833 S.W.2d at 901 (excluding mere negligence among the "egregious" cases meriting punitive damages).

Under Tennessee law, an employer cannot be liable for punitive damages absent a showing of clear and convincing evidence that the employer engaged in the allegedly intentional, fraudulent, malicious, or reckless action—independent of the employee's allegedly intentional, fraudulent, malicious, or reckless action. *See* Tenn. Code Ann. § 23-29-104(a)(9).[3]

---

[3] *See generally Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 366 (6th Cir. 2018) ("We therefore hold that T.C.A. § 29-39-104 is unenforceable to the extent that it purports to cap punitive damage awards."). The Sixth Circuit's holding that the Tennessee punitive damages cap under subsection § 104(a)(5) is unconstitutional did not invalidate the requirement that Plaintiff present evidence of McGee's or Alaska Airlines' independently reckless wrongdoing under Tennessee law.

**IV. Argument**

   A.     *Washington law governs and prohibits Plaintiff's claim for punitive damages;*
          *alternatively, California law may govern by default; Tennessee punitive damages*
          *law is irrelevant.*

As a first step in the choice-of-law analysis, this Court should determine that, indeed, a choice-of-law analysis is warranted in this case because the principles of Washington, California, and Tennessee law governing punitive damages vary substantively and substantially.

Under the second step—comparison of states' interest under Restatement § 6—this Court should find that Tennessee has little to no interest in having its law governing punitive damages apply in this lawsuit by a Nevada resident against Washington/Alaska/Delaware residents arising from an incident in California. As Plaintiff resides in Nevada, no Tennessee residents were harmed by the incident, negating Tennessee's interest in punitive damages. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 704 (W.D. Tenn. 2006) ("Tennessee has an interest in punishing and deterring conduct which harms its domiciliaries.").

In stark contrast, Washington has a significant interest in ensuring its residents are not subject to a punitive damages award in contravention of the public policy of that state. *See Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995Z, 2007 WL 2778257, at *7 (W.D. Wash. Sept. 20, 2007) ("Washington has a strong interest in protecting its own citizens from a lack of 'certainty, predictability, and uniformity of result.'" (citing Restatement (Second) Conflict of Laws § 6)). Additionally, the purpose of punitive damages law under Tennessee law is to punish the most egregious and reprehensible conduct, but none of the alleged misconduct occurred in Tennessee and none of the alleged bad actors reside in Tennessee.

Finally, although the subject incident occurred at the San Francisco airport, California has little interest in this litigation because this case only fortuitously involves California. Plaintiff's

transient property happened to be in California when it was damaged, which was not foreseeable to either Defendant. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d at 707 ("[W]here the defendant has 'little, or no, reason to foresee that his act would result in injury in the particular state,' this lack of foreseeability 'will militate against selection of the state of injury as the state of the applicable law.'") (quoting Restatement (Second) of Conflict of Laws, § 145, cmt. e). As such, this Court should find that a comparison of the various states' interests favors applying Washington's "strong policy" against punitive damages in order to vindicate its "substantial" interest in disallowing punitive damages, which violate its long-established public policy. *Aerospatiale Helicopter Corp.*, 1993 WL 475529, at *3.

As for the third step, this Court's guidance from *Aguirre Cruz* and *Kines* on the weighted consideration afforded certain § 145 factors over others in the context of punitive damages favors this Court applying Washington law over Tennessee or California law.

As for the first consideration under Restatement § 145, place of injury—which is a less relevant consideration for punitive damages choice-of-law purposes—is Nevada, not Tennessee, California, or Washington. It is Plaintiff's primary contention that Tennessee law applies to its punitive damages claim because although Plaintiff is a corporate resident of Nevada whose aircraft was damaged in California allegedly by corporate residents of Washington, Alaska, and/or Delaware, the true place of injury is Tennessee because the aircraft is hangered in Tennessee pursuant to a dry lease governed by Tennessee law. Thus, argues Plaintiff, the financial harm suffered as a result of the aircraft's alleged diminution in value is actually felt in Tennessee.[4] For many reasons, Plaintiff's conclusion that Tennessee punitive damages law applies is notional.

---

[4] Plaintiff makes this argument in its Sur-Reply in opposition to Defendants' first Motion for Partial Summary Judgment regarding punitive damages. [ECF No. 57]. The degree to which Plaintiff leans on this particular issue is puzzling, as Plaintiff's earlier briefing on punitive damages recognized that "the place where the injury occurred is irrelevant for punitive damages choice of law." [ECF No. 34] (citing *Aguirre Cruz*, 435 F. Supp. 2d at 706).

First, since punitive damages have nothing to do with a party's injury or where it is felt, the fact that Plaintiff contends it felt the financial harm of Defendants' conduct in Tennessee is irrelevant to a choice-of-law inquiry for punitive damages under dépaçage. Plaintiff seems to recognize this, having previously chastised Defendants for purportedly overlooking that choice-of-law "factors are to be evaluated according to their relative importance with respect to the particular issue to be decided." [ECF No. 34, at 10] (citing *Maverick Grp. Mktg., Inc. v. Worx Envtl. Prods., Inc.*, 99 F. Supp. 3d 822, 839 (W.D. Tenn. 2015)). With respect to the particular issue of applicable punitive damages law, both California and Tennessee agree that punitive damages are unrelated to the compensation of injured parties. So implications of Plaintiff's specific theory of compensatory damages—i.e., the financial harm of the alleged diminution in value ("DOV") Defendants caused was felt by Plaintiff in Tennessee—plays no role in this Court's choice-of-law analysis concerning punitive damages. Despite Plaintiff's page-after-page emphasis on Tennessee as the place on injury, this factor is irrelevant to the issue at hand.

Second, Plaintiff's assertion that Tennessee is the place of injury is simply wrong.[5] Plaintiff's reliance upon the case *Carolina Indus Prods. Inc. v. Learjet*, 189 F. Supp. 2d 1147 (D. Kan. 2001), is misplaced, as Plaintiff both misinterprets and misapplies the holding in that case. While the District Court indeed applied Georgia law under Kansas's *lex loci delicti* choice-of-law rules because the diminution in value was felt by the plaintiffs in Georgia, it so held because the plaintiff was located in Georgia. The fact that the aircraft was located in Georgia was fortuitous, not dispositive. One need only examine one of the cases that the *Learjet* District Court relied

---

[5] This assertion is also a bit confusing. Plaintiff's briefing consistently uses the passive voice when describing where Plaintiff felt the alleged DOV injury. *See, e.g.*, ECF No. 34, at 13 ("[T]he financial harm of Defendants' conduct *is felt* in Tennessee."); ECF No. 57, at 8 (same). Property does not suffer property damage; legally recognized people suffer damage to their property. To wit, Plaintiff's airplane could not sue for compensatory damages because it is an airplane. To the extent that financial harm resulted from DOV, Plaintiff felt that harm, and Plaintiff is not located in Tennessee and chose not to incorporate in Tennessee.

upon—citation which Plaintiff omitted from its previous briefing—to understand this. Specifically, the cited case explained:

> Plaintiff alleges that it sustained financial injury as a result of defendants' tortious interference; therefore, the court must determine where this financial injury was felt to determine where the tort occurred. *See id.* Plaintiff states that it is located in Kansas and incorporated under the laws of Kansas. Because any financial injury suffered by plaintiff was felt in Kansas, the court will apply Kansas substantive law to plaintiff's tort claims.

*Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1276 (D. Kan. 1998). Similar cases from more persuasive jurisdictions have reached the same result. *See, e.g.*, *McDonald v. Hartford Life & Annuity Ins. Co.*, No. 3:17-CV-90, 2018 WL 9802101, at *3 (E.D. Tenn. Sept. 12, 2018) ("If a plaintiff alleges an economic injury, the injury occurs in the state where the plaintiff is located."); *AutoZone, Inc. v. Glidden Co.*, No. 08-2851, 2011 WL 13229625, at *4 (W.D. Tenn. May 26, 2011) ("AutoZone's principal place of business is in Tennessee and it suffered financial harm there because of ICI Paints' actions."); *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 647 n. 3 (6th Cir. 2013) ("Here, the alleged injury [to the Town of Smyrna] is an economic loss, so it occurred in Smyrna, Tennessee."). In the present case, Plaintiff is incorporated in Nevada with its principal place of business also in Nevada. Therefore, Plaintiff suffered the alleged DOV in Nevada, not Tennessee, and Plaintiff's flawed reliance upon the *Carolina Indus. Prods.* is unpersuasive for the purpose cited.[6]

---

[6] Defendants do not suggest that Nevada law should govern Plaintiff's punitive law claims. This Court need not differentiate between California law (addressed herein) and Nevada law, as no conflict exists between these states' punitive damages law. *Compare* Nev. Rev. Stat. § 42-005(1) ("[I]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant."), *with* Cal. Civ. Code § 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.").

Third, the nexus between this litigation and the State of Tennessee is nearly nonexistent. Were it not for the fact that Defendants waived their objections, this Court would lack personal jurisdiction over Defendants. Plaintiff has attempted to ensnare Alaska Airlines in Tennessee by pointing to the address in Alaska Airlines' registration with the Tennessee Secretary of State as a ***Foreign*** For-profit Corporation.[7] It would defy reason for anyone to believe—contrary to Mr. Beyer's Affidavit [ECF No. 32-1]—that the entire corporate headquarters of a national air carrier of Alaska Airlines' size is confined to a single suite at the Nashville International Airport. Moreover, the Master Ground Services Agreement—the very contract that Plaintiff relies upon to extend liability from McGee to Alaska Airlines—provides that both corporations are located in Washington and their relationship should be governed by Washington law. Like the other fortuitous connections to Tennessee Plaintiff attempts to spotlight, this contact is tangential and immaterial to the choice-of-law factors this Court must consider. It cannot be disputed that Alaska Airlines is neither incorporated nor headquartered in Tennessee. Even if the Court accepts Plaintiff's errant argument that Tennessee law should apply because Alaska Airlines has a "principal address" in Nashville, Plaintiff cannot make such an argument against McGee, who is neither registered with nor related to the State of Tennessee. As a result, Plaintiff's own analysis is incomplete and does not offer this Court any basis to impose Tennessee law against McGee.

As for the second consideration under Restatement § 145—the place where the conduct causing the injury occurred—Plaintiff has alleged that the malicious or reckless misconduct that supports punitive damages all stems from corporate decision-making regarding training, supervision, warning, and inspecting and implantation of these decisions—all of which occurred at Defendants' principal places of business in Washington or at the site of the subject incident in

---

[7] To Plaintiff's credit, it does not make the argument that Alaska Airlines is actually domiciled in Tennessee—which would factor into this Court's choice-of-law analysis—only that it registered an address in Nashville.

California.  This fact bears heavily on the Court's analysis.  *See* REST. (SECOND) OF CONFLICTS OF LAWS § 145, cmt. e ("[W]hen the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance."); *Aguirre Cruz*, 435 F. Supp. 2d at 707 (finding the defendant's principal place of business where allegedly negligent corporate decisions were made to constitute "most of the relevant conduct" for the purposes of weighing Restatement § 145 factors for choice-of-law for punitive damages).  Specifically, Plaintiff relies upon the Master Ground Services Agreement between McGee and Alaska Airlines in support of its vicarious liability claims related to negligent entrustment, hiring, and supervision. [ECF No. 27, at ¶¶ 41–50].  Accordingly, the majority of the conduct relevant to Plaintiff's punitive damages claim occurred in Washington.

Alternatively, how Alaska Airlines' and McGee's corporate decisions were implemented at San Francisco International Airport could also be construed at a much less significant level to be the conduct allegedly causing the injury—although these allegations sound more in ordinary negligence than malice or recklessness.  As such, the second § 145 consideration is a weighty consideration and weighs heavily in favor of Washington law.

Plaintiff inexplicably contends that the conduct causing the injury occurred in Tennessee because the San Francisco Airport Badging Office required the background check for Daniel Foots, a McGee employee involved in the incident, to be sent through a Postal Inspector's Office in Memphis so that Mr. Foots would be cleared to access, under federal law, United States Postal Service parcels.[8]  [ECF No. 57, at 9].  This Court should not even consider such *de minimus* contact in this choice-of-law inquiry since Mr. Foots' background check to handle the U.S. Mail is completely unrelated to Plaintiff's claim for punitive damages.

---

[8] Plaintiff erroneously contends that Defendants "deflect blame" to Mr. Foots for the incident.  This is untrue and misinterprets McGee's Response to Request for Admission No. 9 and the McGee Accident and Injury Report.

As for the third consideration under Restatement § 145—the place of incorporation of the parties—both Defendants are headquartered in Washington, Plaintiff is incorporated and headquartered in Nevada, and no party is incorporated or headquartered in Tennessee.  The fact that Plaintiff keeps its aircraft in Tennessee is inapposite, as is Plaintiff's attempt to manufacture a genuine issue of material fact regarding the site of Alaska Airlines' corporate headquarters.  Mr. Beyer's and Mr. Berry's Affidavits on this issue are undisputed and irrefutable.  [ECF Nos. 35-1, 35-4].  This factor carries particular significance under Restatement § 145 and, like the similarly significant second factor, calls for Washington law to govern Plaintiff's punitive damages claim.

As for the final consideration under Restatement § 145, Plaintiff and Defendants have no relationship.  The subject incident was the first and remains the only interaction between these parties.  Accordingly, this non-factor does not favor applying Washington, California, or Tennessee punitive damages law.  Plaintiff erroneously asserts that the parties' relationship is centered in Tennessee because it "is the one state where both [Plaintiff] and [Alaska Airlines] conduct business."  [ECF No. 57, at 10].  But, they do not do business *with each other*, and this argument ignores McGee entirely.  In reality, these parties have no relationship, and this Court should consider this already unimportant factor with minimum regard.  *See Aguirre Cruz*, 435 F. Supp. 2d at 707–08.

To summarize the third step in the choice-of-law analysis: (1) the place of injury is Nevada because Plaintiff is located in Nevada; (2) the place where the conduct causing the injury is either Washington, where Defendants' corporate decisions were made, or California, where those decisions were implemented; (3) the place of incorporation or place of business for Plaintiff is Nevada, for Alaska Airlines is Washington and Alaska, and for McGee is Washington and Delaware; and (4) the place where the relationship is centered is either a non-factor or California,

17

solely because of this incident.  Of these, the most important factors for punitive damages favor

applying Washington law.  *See Aguirre Cruz*, 435 F. Supp. 2d at 706 (prioritizing the interests of

the state in which the conduct occurred {Washington or California, in that order} and in which the

principal place of business and place of incorporation of defendant are located {Washington} in

the punitive damages choice-of-law context).

     In accordance with Tennessee choice-of-law principles, on balance, this Court should find

that Plaintiff's claim for punitive damages is governed by Washington law, and in accordance with

Washington law, this Court should find that Plaintiff's punitive damages claim is void.

     B.    *Plaintiff cannot establish malice under California law or recklessness under Tennessee law based upon undisputed facts that are material.*

     Should this Court conclude Washington law does not apply to Plaintiff's punitive damages

claim and finds instead that either California or Tennessee law governs, both Defendants are

entitled to summary judgment as there is no genuine issue of material fact as to whether either

Defendant engaged in malicious (California) or reckless (Tennessee) conduct or ratified their

agents' malicious or reckless conduct.  As such, this Court should grant summary judgment in

Defendants' favor on Plaintiff's punitive damages allegations regarding direct liability and

vicarious liability.

     Regardless of whether this Court applies California or Tennessee law, Plaintiff's punitive

damages claim is factually unsupportable.  No clear and convincing evidence supports a finding

that Alaska Airlines or McGee has any direct or vicarious liability for punitive damages arising

from the subject incident.  In response to Defendants' first Motion for Partial Summary Judgment

regarding punitive damages, Plaintiff submitted an Affidavit from its counsel, who swore that

Plaintiff needed more time to conduct discovery regarding punitive damages before responding to

Defendants' Motion.  [ECF No. 33-1].  Despite the attestations in this Affidavit, Plaintiff took **zero**

depositions of Defendants' employees.   Consequently, Plaintiff can now offer this Court no testimony or evidence from any McGee employees working prior to the subject incident, their supervisors, or any officers or directors at either Alaska Airlines or McGee.[9]

Specifically, Alaska Airlines did not employ the ground crew on the date of the subject incident.  Nor has Plaintiff developed any proof whatsoever that Alaska Airlines' mere ownership of the subject air stairs gives rise to any liability, much less heightened liability for punitive damages, through some form of wrongful delegation.[10]  Further, the undisputed facts in this case demonstrate that McGee trained its employees, including Marcel Taylor, Daniel Foots, and Dominique Belton, to **always** engage the brakes on the air stairs—irrespective of the prevailing weather conditions—rendering Plaintiff's contention that McGee recklessly or maliciously did not provide weather-specific instructions to its employees inert.  Nor can Plaintiff manufacture a genuine issue of material fact by misleadingly arguing that McGee did not know the whereabouts of the three employees at the time of the incident or that Mr. Foots was terminated for time fraud. [ECF No. 57 at 3].  Two of the three employees involved were at work, while one had clocked out and left, and whether Mr. Foots was terminated for time fraud on February 28, 2019 is completely unrelated to the cause of the February 2, 2019 incident and Plaintiff's claim for punitive damages. The precise whereabouts of the employees at the time of the incident is irrelevant, as McGee has admitted its negligence for not setting the air stairs brake.  Therefore, this Court would wisely disregard Plaintiffs' prior contentions that the three employees acted recklessly or maliciously or

---

[9] Ironically, Plaintiff opposed Defendants' first punitive damages Motion for Partial Summary Judgment, arguing, "Meanwhile, there is no testimony from an actual representative of Defendant McGee, or the actual 'employees' or 'ground crew' concerning each's involvement with the air stairs at issue, his/her intent, his/her prior incidents, and/or his/her training and job performance."  [ECF No. 34, at 15].  Given that Plaintiff did not depose any of Defendants' representatives or employees, there is still—eight months later—no testimony to this effect, further justifying summary judgment on punitive damages.

[10] The Master Ground Services Agreement between Alaska Airlines and McGee clearly sets forth that McGee is responsible for consequences of McGee's use of equipment owned by Alaska Airlines, including the subject air stairs. [ECF No. 27-1 at Page ID 122].

that Alaska Airlines or McGee recklessly or maliciously failed to train and supervise these employees.

Finally, Plaintiff cannot satisfy its burden of proving punitive damages under a theory of vicarious liability under California or Tennessee law because there is no evidence that Alaska Airlines or McGee (1) had advance knowledge of the unfitness of Marcel Taylor, Daniel Foots, and Dominique Belton and employed them with a conscious disregard of the rights or safety of others; (2) authorized or ratified their actions giving rise to this lawsuit; or (3) were independently or personally guilty of intentional wrong, oppression, fraud, malice, or recklessness.  *See* Cal. Civ. Code § 3294 (b); Tenn. Code Ann. § 23-29-104(a)(9).  As a result, Plaintiff cannot prove any malicious or reckless conduct by any officer or director or ratification by any officer or director of any malicious or reckless conduct of any employees or agents.

Throughout this case, Plaintiff has described Defendants collectively, rather than attributing individual acts or omissions to each Defendant individually.  This tactic, however, is not evidence and is contrary to the undisputed facts.  In order to survive this Motion for Partial Summary Judgment on its punitive damages demand, Plaintiff must offer this Court some justification for finding that a reasonable fact finder could return a verdict against Alaska Airlines or McGee for punitive damages on the grounds that Alaska Airlines or McGee engaged in conduct that is at least malicious or reckless—both of which require evidence of each Defendant's mindset. *See Anderson*, 477 U.S. at 248.  Given Plaintiff's strategic decisions in discovery, Plaintiff now lacks any evidence whatsoever to substantiate the allegations in its Amended Complaint regarding punitive damages.

This is a simple negligence case stemming from a dispute as to compensatory property damage valuation, and both California and Tennessee disapprove of punitive damages in simple

negligence cases.  *See Tomaselli*, 25 Cal. App. 4th at 1288 n. 14 (California); *Hodges*, 833 S.W.2d at 901 (Tennessee).  Plaintiff has only collected ancillary factual issues and presented them out of context—presumably with the objective of conjuring a question of disputed (although immaterial) fact.  [ECF Nos. 58-1 through 58-13].  But, relevant evidence that demonstrates that Alaska Airlines or McGee acted in a truly reprehensible, egregious, or despicable manner does not exist.  Accordingly, this Court should find that both Defendants are entitled to judgment on Plaintiff's claim for punitive damages as a matter of California and Tennessee law.

### V. Conclusion

Under Tennessee choice-of-law rules, Washington law prohibits Plaintiff's punitive damages claim.  In the alternative, California law governs, but even under Tennessee law, Defendants are entitled to judgment as a matter of law on punitive damages.  It is Plaintiff's burden to present clear and convincing evidence justifying punitive damages.  Plaintiff, however, cannot offer any evidence of Defendants' alleged maliciousness or recklessness as to justify this Court allowing Plaintiff's punitive damages claim to proceed to trial.

For any or all of the foregoing reasons and for good cause shown, Defendants implore this Court to adopt one of the following findings concerning Plaintiff's punitive damages claim:

A. That Washington law governs Plaintiff's punitive damages claim, and in accordance with Washington law, Plaintiff's claim for punitive damages is void as a matter of law;

B. As a primary alternative, even if California law governs Plaintiff's punitive damages claim, in accordance with California law, Plaintiff has not shown with clear and convincing evidence that either Defendant is guilty of oppression, fraud, or malice; or,

C. As a secondary alternative, even if Tennessee law governs Plaintiff's punitive damages claim, in accordance with Tennessee law, Plaintiff has not shown with clear and

convincing evidence that either Defendant engaged in intentional, fraudulent, malicious, or reckless conduct.

Respectfully submitted,

**PETKOFF AND FEIGELSON**, PLLC

 /s/ Logan A. Klauss

James L. Cresswell, Jr. (#26257)
Logan A. Klauss (#34311)
David I. Feigelson (#20350)
80 Monroe Ave., Suite 415
Memphis, Tennessee 38103
(901) 523-1050
*Attorneys for Defendants Alaska Airlines, Inc. and McGee Air Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2021, a copy of **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OT THEIR SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PUNITIVE DAMAGES** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following:

Mr. Gary L. Edwards
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
100 Med Tech Parkway, Suite 200
P.O. Box 3038
Johnson City, TN 37602
gedwards@bakerdonelson.com
*Attorney for Plaintiff*

 /s/ Logan A. Klauss
Certifying Attorney

22