IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RADAIR, LLC,

    Plaintiff,

v.                                                                 No. 2:20-cv-02286-MSN-cgc

ALASKA AIRLINES, INC., and
MCGEE AIR SERVICES, INC.

    Defendants.

---

**ORDER GRANTING DEFENDANTS' SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING PUNITIVE DAMAGES**

      Before the Court is Defendants Alaska Airlines and McGee Air Services' Second Motion for Partial Summary Judgment Regarding Punitive Damages, filed on July 30, 2021. (ECF Nos. 75, 76) ("Motion".)  Defendants included a Statement of Undisputed Material Facts. (ECF No. 77.)  Plaintiff filed its Response to the Motion along with a Response to Defendants' Statement of Undisputed Material Facts on August 27, 2021. (ECF Nos. 78, 79.)  Defendants then filed their Reply to both Responses on September 9, 2021, separately and respectively. (ECF Nos. 80, 81.)  For the reasons discussed below, Defendants' Motion is **GRANTED**.

**BACKGROUND**

      The Court recites the following facts to decide Defendants' Motion only.  On April 16, 2020, Plaintiff Radair, LLC, incorporated and with its principal place of business in Nevada, filed the instant action against Defendant, Alaska Airlines, Inc., incorporated in Alaska with its stated principal place of business in Washington, alleging damages that exceed seventy-five thousand

1

dollars ($75,000.00).¹ (ECF No. 1.) Both Defendants explicitly waived any objections to personal jurisdiction they might have otherwise had. (ECF No. 28 at PageID 156; ECF No. 29 at PageID 167.) The Court granted Plaintiff's Motion to Amend the Complaint, (ECF No. 23), to add Defendant McGee Air Services, incorporated in Delaware with its principal place of business in Washington, on October 19, 2020.² (ECF Nos. 26.) Plaintiff filed its Amended Complaint on October 26, 2020, wherein it requested *inter alia* punitive damages in the amount of at least five million dollars ($5,000,000.00) based on Defendants' allegedly "intentional or reckless" conduct.³ (ECF No. 27 at PageID 118.) Defendants contend, with identical language in their respective Answers, that punitive damages would be inappropriate because "there are no factual allegations that would support an award of punitive damages." (ECF No. 28 at PageID 162; ECF No. 29 at PageID 172.) Defendants subsequently filed the instant Motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment—and the Court to grant summary judgment—when "the movant shows that there is no genuine dispute

---

¹ The Court recognizes that LLCs enjoy the citizenship of their members, not principal place of business or place of incorporation like corporations. *See Carden v. Arkoma Associates*, 494 U.S. 185, 195–96 (1990). Here, however, Radair, LLC has one member—Safety Supply Corporation—listed in its Disclosure Statement, (ECF No. 2), which is incorporated with its principal place of business at 880 North Hills Boulevard, Reno, Nevada 89506-5710. *See* Radair, LLC, Corporates Finder (accessed December 10, 2021), https://corporatesfinder.com/c/nv/E0589392014-5/radair-llc. Therefore, the Court finds Radair, LLC is a citizen of Nevada because its sole member is a citizen of Nevada; all subsequent references to Radair, LLC's "principal place of business" and/or "place of incorporation" in this Order should be understood accordingly.

² Although incorporated in Delaware, McGee Air Services stipulates that it is a "wholly owned subsidiary of Alaska Airlines." (ECF No. 29 at PageID 167.) Alaska Airlines stipulates that it "has an agreement with McGee to perform ground services on its behalf." (ECF No. 28 at PageID 156.)

³ Defendants argue that Plaintiff's punitive damages claim only attaches to Count One in the Complaint, which alleges negligent conduct. (ECF No. 76 at PageID 1068–69.) Plaintiff does not dispute this characterization.

2

as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party that asserts the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). To decide a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden to show that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence to support its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *See Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White*

*v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *See Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact; that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. This determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## **DISCUSSION**

Defendants raise two arguments that the Court must address to adjudicate the Motion and decide whether partial summary judgment should be granted as to Plaintiff's punitive damages

4

claim.[4]  *First*, as a threshold matter, the Court must decide whether Washington, California, or Tennessee law controls.  *Second*, should the Court find Tennessee or California law applicable, it must determine whether any genuine dispute of material fact exists as to whether Defendants engaged in reckless or malicious conduct under Tennessee or California law respectively.[5]  (*See* ECF No. 76 at PageID 1085.)

    a. **Choice of Law: Framework**

The Court begins by applying Tennessee choice of law rules because it sits in Tennessee and subject-matter jurisdiction properly arises from diversity of citizenship with an amount in controversy that exceeds seventy-five thousand dollars ($75,000.00).  *See* 28 U.S.C. § 1332(a); *Std. Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013) ("A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits."); *see also Erie Railroad Co. v. Tompkins*, 304 U.S 64, 58 (1938); *Muncie Power Prods. v. United Techs. Auto., Inc.*, 328, 373 (6th Cir. 2003).  Furthermore, "a federal court in a diversity action is obligated to apply the law it believes the highest court of the state would apply if it were faced with the issue." *Mahne v. Ford Motor Co*., 900 F.2d 83, 86 (6th Cir. 1990).

The Tennessee Supreme Court has adopted the Second Restatement's "most significant relationship" rule for tort litigation.  *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992); *see Uhl v. Komatsu Forklift Co*., 512 F.3d 294, 302 (6th Cir. 2008); *see also Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).  This approach prescribes that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the

---

[4] The Court will address only those facts *material* to its determination on the punitive damages issue, which is the matter before the Court given the substance of Defendants' Motion.
[5] In Washington, "punitive damages are not allowed unless expressly authorized by the legislature." *Barr v. Interbay Citizens Bank*, 635 P.2d 441, 443 (Wash. 1981); *see also Steele v. Johnson*, 458 P.2d 889 (Wash. 1969); *Maki v. Aluminum Bldg. Prods*., 436 P.2d 186 (Wash. 1968).

litigation." *Id*. at 59. Tennessee courts may consider seven principles to determine which state has the "most significant relationship" to the litigation. *See Lansky v. Prot. One Alarm Monitoring, Inc.*, No. 2:17-cv-2883-SHM-dkv, 2018 WL 3077803, at *10 (W.D. Tenn. 2018). These principles include: "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied." *Hataway*, 830 S.W.2d at n.3 (quoting Restatement (Second) of Conflict of Laws § 6 (Am. Law Inst. 1971)). To properly apply the principles outlined above from § 6, courts must consider the following factors (or "contacts"): "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id*. The Restatement "provides a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation.'" *Hataway*, 830 S.W.2d. at 59 (quoting Restatement (Second) of Conflict of Laws § 6 (Am. Law Inst. 1971)). Thus, a court may elect not to consider principles or factors that lack relevance to the litigation. *See, e.g.*, *Wyeth*, 580 F.3d at 459–60 (affirming district court's choice of law decision based on just four of the seven principles).

### b. Choice of Law: Parties' Positions

Defendants argue that Washington law controls for four reasons. First, they cite *Kines v. Ford Motor Co.* to contend that the doctrine of dépeçage permits applying two states' substantive laws to two separate issues in the same case (e.g., compensatory versus punitive damages).[6] No. 1:19-cv-01054, 2020 WL 5550396, *at 2 (ECF No. 76 at PageID 1072.) Second, they note that Tennessee's interest in the litigation is minimized because Plaintiff is a resident of Nevada and therefore no harm befell a Tennessee resident. (*Id*. at PageID 1078.) Third, they argue that Washington's "strong interest in protecting its own citizens . . ." weighs in favor of applying Washington law because both Defendants are Washington citizens. *Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995Z, 2007 WL 2778257, at *7 (W.D. Wash. 2007) (ECF No. 76 at PageID 1078.) Finally, Defendants cite *Cruz v. Ford Motor Co.* to assert that California has a minimal interest in this litigation because neither Defendant could reasonably foresee the damage occurring in California. 435 F. Supp. 2d 701, 707 (W.D. Tenn. 2006) (ECF No. 76 at PageID 1079.)

Plaintiff submits that Tennessee law controls for five reasons. First, it responds to Defendants' dépeçage argument by citing *Baldschun v. Action Resources, LLC* to contend that "when Tennessee law governs liability . . . [it] must also govern the closely related issue of punitive damages."[7] No. 1:19-cv-49, 2021 WL 1410033, at *6 (E.D. Tenn. 2021) (ECF No. 78 at PageID 1109.) Second, it cites *Carolina Indus. Prods., Inc. v. Learjet, Inc.* to show that because the

---

[6] The doctrine of dépeçage provides that a district court may apply the substantive laws of two separate jurisdictions to distinct issues within the same action. *See Hartford Cas. Ins. Co. v. Calcot, Ltd.*, No. 07-cv-02405, 2009 WL 10699722, *11 (W.D. Tenn. 2009); *Hoover v. Recreation Eqpt. Corp.*, 792 F. Supp. 1484, 1490–91 (N.D. Ohio 1991).

[7] The Motion before the Court is a narrow one and only addresses choice of law for punitive damages. Accordingly, the Court need not take a position on dépeçage at this time.

damaged aircraft "is hangered and dry leased in Memphis, Tennessee" the injury was "felt" in Tennessee and thus the Court should apply Tennessee substantive law. 189 F. Supp. 2d 1147, 1165–66 (D. Kan. 2001) (ECF No. 78 at PageID 1108, 1110.) Third, it argues that the injury occurred in Tennessee or California because Defendant McGee screened the employee charged with securing the air stair in Tennessee and the air stair collided with the aircraft at a California airport. (ECF No. 78 at PageID 1110.) Fourth, Plaintiff maintains that all Defendants do business in Tennessee and Defendant Alaska Airlines has its principal place of business at the Nashville airport because it registered a "principal address" there.[8] (*Id.*) Fifth, it asserts that the foregoing facts, taken together, indicate that the relationship between the parties is centered in Tennessee and that Tennessee law should therefore apply. (*Id.*)

    c. **Choice of Law: § 145 Contacts Analysis**

The Court engages in a two-prong analysis to decide a conflicts of law issue under Tennessee's choice of law rules. *First*, it must determine whether an "actual conflict" exists between Tennessee's punitive damages law and the laws of another state. "An actual conflict between two states' laws is a prerequisite to a choice of law analysis." *Novadx Ventures, Corp. v. Gress Eng'g, P.C.*, No. 12-78-GFVT, 2013 WL 794375, * 5 (E.D. Ky. 2013); *see Armstrong v. U.S. Fire Ins. Co.*, 606 F. Supp. 2d 794, 802 (E.D. Tenn. 2009). An actual conflict "exists when

---

[8] Plaintiff also shares that one other court found Alaska Airlines' principal place of business to be in Anchorage, Alaska in 2011. *See Findlay v. Alaska Air Group, Inc.*, 2011 WL 2710499, *1 (D. Nev. 2011) (ECF No. 78 at PageID 1111.) This authority bears little significance here because it does not reinforce Plaintiff's argument that Alaska Airlines' *principal place of business* is in Tennessee. Ultimately, *Findlay* contradicts Plaintiff's position because it casts doubt on Alaska Airlines' principal place of business allegedly being in Nashville (one of Plaintiff's reasons to apply Tennessee law). To the extent Plaintiff intends this argument to cast doubt on Alaska Airlines' true principal place of business, the Court affords little weight to an unreported, extra-jurisdictional case and does not find it persuasive enough to conclude—contrary even to Plaintiff's position—that Alaska Airlines has its principal place of business in Anchorage.

two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) (quoting *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car System, Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009)). *Second*, should it identify an actual conflict, the Court then determines which state has the "most significant relationship" to the litigation under the factors announced in § 145 of the Restatement (Second) of Conflict of Laws adopted by the Tennessee Supreme Court in *Hataway*.

Turning to the first prong, an actual conflict certainly exists. Whereas Tennessee, Nevada, and California recognize punitive damages in limited circumstances, Washington does not. *See* Tenn. Code Ann. § 29-39-104(a)(1) (2014) ("Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly."); Nev. Rev. Stat. § 42.005 (2011) (". . . where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff . . . may recover damages for the sake of . . . punishing the defendant"); *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019) (Under Cal. Civ. Code § 3294 (1992), "[p]unitive damages are recoverable upon a showing of malice, fraud, or oppression."); *Barr*, 635 P.2d at 443 (explaining Washington does not recognize punitive damages). Therefore, an actual conflict emerges because Plaintiff's punitive damages eligibility depends on which state's law applies. *See Cooper*, 575 F.3d at 1171.

The heart of the parties' dispute arises under the second prong, which requires the Court to determine whether Tennessee or Washington has the "most significant relationship" to this litigation. *See Hataway*, 830 S.W.2d 53. This determination warrants a § 145 contacts analysis. *See Timoshchuk v. Long of Chattanooga Mercedes-Benz*, No. E2008-01562-COA-R3-CV, 2009

9

WL 3230961, at *29–30 (Tenn. Ct. App. 2009).  In Tennessee, "the law of the place of injury will normally apply unless another state has a more significant relationship to the occurrence and the parties" as dictated by the other § 145 factors.  *Maverick Grp. Mktg. v. Worx Envtl. Prods.*, 99 F. Supp. 3d 822, 839 (W.D. Tenn. 2015).  Here, this presumption will be overcome for four reasons.

*First, the place of injury* is Nevada because pecuniary losses "will normally be felt most severely at the plaintiff's headquarters or principal place of business."  Restatement (Second) of Conflict of Laws § 145 cmt. f. (Am. Law Inst. 1971) (ECF No. 27 at PageID 109.)  While Plaintiff argues that Tennessee is the place of injury because it felt financial harm there, Plaintiff's authority discredits this argument.  Plaintiff cites *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, decided in the District of Kansas, for the proposition that "for choice of law purposes the Court must look to the state in which the plaintiff felt the financial harm."  (ECF No. 78 at PageID 1108.)  In *Learjet*, as Defendants correctly point out and consistent with § 145 cmt. f., the court ultimately applied Georgia law because the plaintiffs were "located" in Georgia and thus felt harm there.  *Learjet*, 189 F. Supp. 2d at 1165–66.  Nevertheless, numerous courts have found a plaintiff's domicile irrelevant to a choice of law analysis focused on punitive damages.[9]  *See, e.g.*, *Cruz*, 435 F. Supp. 2d at 706; *see Town of Smyrna Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 647 n. 3 (6th

---

[9] *In re Disaster at Detroit Metro. Airport on August 16, 1987*, 750 F. Supp. 793, 805 (E.D. Mich. 1989) ("the domicile or residence of the plaintiff is not relevant to an evaluation of the choice of law issues concerning punitive damages because the decision by a state on whether to allow punitive damages focuses solely on corporate regulatory versus corporate protective policies"); *Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 239 (D.D.C. 2005) ("The District of Columbia, home of the Plaintiffs both when the Explorer was purchased and when the accident occurred, is interested in their compensatory recoveries but not punitive damages."); *Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1528–29 (S.D.N.Y. 1986) ("the interest of plaintiff's domicile has little relevance since punitive damages are designed to punish a defendant, not to compensate a plaintiff"); *Kelly v. Ford Motor Co.*, 933 F. Supp 465, 469 (E.D. Penn. 1996) (finding plaintiff's domicile and place of injury irrelevant for punitive damages choice of law); *see also Fanselow v. Rice*, 213 F. Supp. 2d 1077, 1084 (D. Neb. 2002) (finding the only jurisdictions with interests in punitive damages are those with whom defendants have significant contacts).

Cir. 2013); *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786 (W.D. Tenn. 2011) (noting that an economic injury occurs at the injured party's principal place of business). Therefore, the Court affords this factor little weight and finds Nevada does not have a significant interest in imposing punitive damages in this litigation; other § 145 factors offer more instructive guidance. *See Wahl v. G.E.*, 786 F.3d 491, 500 (6th Cir. 2015) (presumption for applying law of place of injury overcome when necessitated by other § 145 factors per "most significant relationship test").

*Second, the place where the conduct causing the injury occurred* is California because the McGee employee's failure to secure the air stair occurred in California and that failure caused the financial harm to Plaintiff's aircraft.[10] Here, Plaintiff asks the Court to instead find the conduct causing the injury occurred in Tennessee because Defendants screened the negligent employee for hire in Tennessee. (ECF No. 78 at PageID 1110.) However, Plaintiff has not cited any case law to support this position and other courts have found that the place where an employer's negligent hiring decision took place, without more, too remote to conclude the conduct causing the injury occurred there.[11] *See Herndon v. Torres*, 249 F. Supp. 3d 878, 884–85 (N.D. Ohio 2017). California's at best fortuitous interest[12] in the litigation coupled with Washington's strong policy

---

[10] The Court finds it reasonable to believe that unsecured air stairs could roll across the tarmac and inflict injury; Defendants "do not dispute that McGee employees did not engage the brakes on the air stairs prior to the subject incident" and that unsecured air stairs risk damage to parked aircraft. (ECF No. 81 at PageID 1251–52.)

[11] Some courts have found that negligent hiring decisions under this § 145 factor, as they pertain to punitive damages, "occurred" in the state where the defendant employer has its principal place of business. *Williams v. Novartis Pharms. Corp.*, 15 F. Supp. 3d 761, 766 (S.D. Ohio 2014); *Cruz*, 435 F. Supp. 2d at 707. Here, drawing the inference most favorable to the nonmoving party that the place of decision should control, this approach also favors the application of Washington law, not Tennessee or California law.

[12] It is no more foreseeable that Plaintiff's aircraft would sustain damage of this kind at a California airport than any other airport where unsecured air stairs could roll across the tarmac.

interest in protecting its citizens also weigh against applying California punitive damages law, which Plaintiff requests in the alternative. *Id*. (ECF No. 78 at PageID 1110.) Therefore, the Court finds this factor less relevant to its determination.

*Third, the parties' places of incorporation and principal places of business* will be considered. Plaintiff, through the citizenship of its sole member, is domiciled in Nevada. (*See* ECF No. 2.) Defendant Alaska Airlines is incorporated in Alaska and Defendant McGee is incorporated in Delaware; both Defendants have their principal places of business in Washington, and thus are domiciled there. (ECF Nos. 13, 29.) Courts—including this one—afford greater weight to this factor when deciding choice of law questions that involve punitive damages. *See Cruz*, 435 F. Supp. 2d at 706 (quoting *In re Air Crash Disaster near Chicago*, 647 F.2d 594, 613 (7th Cir. 1981)) ("The states where the conduct occurred and where the defendant has its principal place of business 'have an obvious interest in preventing future misconduct . . .'"); *Keene Corp. v. Ins. Co. of North America,* 597 F. Supp. 934, 938 (D. D.C. 1984) ("When the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located."); *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996) (finding corporate defendant's state of incorporation and principal place of business a "most critical" contact in punitive damages choice of law analysis); *see also Fanselow v. Rice,* 213 F. Supp. 2d 1077, 1084 (D. Neb. 2002) (finding that the only jurisdictions with interests in punitive damages are those with whom defendants have significant contacts).

---

The facts do not make California a uniquely foreseeable forum for this injury and no party has California citizenship. Therefore, California's interest is fortuitous.

Here, Defendants argue that Washington law controls because both Defendants have principal places of business in Washington and no party has Tennessee citizenship. (ECF No. 76 at PageID 1084.) Plaintiff responds that Alaska Airlines does business in Tennessee and has a state-registered "principal address" at the Nashville Airport. (ECF No. 78 at PageID 1110.) However, principal place of business is the relevant inquiry at this analytical stage, not principal address.[13] Drawing all inferences in Plaintiff's favor, the Court must assess whether the Nashville office meets the test for a principal place of business. According to the U.S. Supreme Court, "the phrase 'principal place of business' refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities . . . th[is] 'nerve center' will typically be found at a corporation's headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). The Court finds Plaintiff's argument that Alaska Airlines maintains its principal place of business in Nashville unpersuasive for three reasons. First, applying *Hertz* directly, the Court received two sworn affidavits that confirm Defendants' "nerve centers" are in Washington and no facts in the record suggest otherwise. (ECF No. 35-1 at PageID 237; ECF No. 35-4 at PageID 247.) Second, the fact that Defendants registered *an* address in Nashville does not bear on the Court's analysis because Defendants are not domiciled there. Finally, Plaintiff does not account for the Secretary's designation of the address in question as one belonging to a foreign for-profit corporation—a fact that weighs against using this factor to justify an application of Tennessee law. Therefore, this factor suggests that Washington law controls.

*Finally, the Court turns to the place where the parties' relationship is centered.* Whereas Defendants argue the parties did not have a relationship before this litigation, (ECF No. 76 at

---

[13] Consistent with Plaintiff's authority in *Mullin v. Southeast Bank*, courts may take judicial notice of public records to determine *principal place of business*. No. 2:18-cv-00046, 2019 WL 2482162, *9 (M.D. Tenn. 2019).

PageID 1084), Plaintiff argues the relationship is centered in Tennessee because: (1) both parties do business there; (2) the injury was felt in Tennessee; (3) the employee was screened in Tennessee; and (4) Defendants agreed to litigate in Tennessee. (ECF No. 78 at PageID 1111.)

Here, the fact that two entities do business in a state does not necessarily mean they have a relationship, let alone one centered in that state. That Defendants agreed to litigate in Tennessee also does not indicate independent grounds for a relationship centered outside this litigation. The Court incorporates by reference its earlier analyses about employment screening and where Plaintiff alleges it felt the injury; in short, these arguments are equally unpersuasive on this factor. Moreover, Washington has a strong policy against punitive damages that the highest Court in that state has perennially recognized. *See Barr v. Interbay Citizens Bank*, 635 P.2d 441 (Wash. 1981); *Steele v. Johnson*, 458 P.2d 889 (Wash. 1969); *Maki v. Aluminum Bldg. Prods.*, 436 P.2d 186 (Wash. 1968); *Conrad v. Lakewood Gen. Hosp.*, 410 P.2d 785 (Wash. 1966); *Broughton Lumber Co. v. BNSF Ry.*, 278 P.3d 173, 183 n. 14 (Wash. 2012) (". . . Washington prohibits the recovery of punitive damages as a violation of public policy unless expressly authorized by statute.") On balance, the Court finds the § 145 factors favor applying Washington law to the punitive damages issue in this matter.[14] Therefore, because Washington law does not recognize punitive damages, Plaintiff is not entitled to them as a matter of law and Defendants' Motion is hereby **GRANTED**.

---

[14] Plaintiff also argues that Defendants have asked the Court to apply Washington law because it "harbors wrongdoers" from punitive damages. (ECF No. 78 at PageID 1112.) The Court emphasizes that it finds Washington law applies primarily because *Defendants are domiciled there*, and Washington has a strong policy interest in protecting its citizens that this Court cannot ignore. *See Sadler*, 2007 WL 2778257, at *7. Had Defendants asked the Court to apply the law of a state in which they were *not* domiciled, Plaintiff's argument would have more merit; however, those facts have not been raised here and Washington has a more significant relationship to this matter than Tennessee.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion is **GRANTED**.

**IT IS SO ORDERED** this 20th day of January, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE
