IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RADAIR, LLC,

    Plaintiff,

v.                                                       No. 2:20-cv-02286-MSN-cgc

ALASKA AIRLINES, INC., and
MCGEE AIR SERVICES, INC.,

    Defendants.

---

### ORDER ON MOTIONS IN LIMINE AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR DUFOUR'S REMOTE APPEARANCE

---

Before the Court are the parties' remaining motions in limine and one request: (A) Defendants Alaska Airlines and McGee Air Services' ("Defendants") Motion to Exclude Expert testimony from Nadhim Nielsen, ("Motion in Limine No. 1") (ECF No. 86); (B) Plaintiff Radair LLC's ("Plaintiff") oral request to allow its expert, David Crick, to listen to the reading of Defendants' expert Robert Dufour's deposition testimony ("Plaintiff's Expert Request"); (C) Defendants' Motion to Exclude Plaintiff's Pretrial Exhibits 29–34 ("Motion in Limine No. 3"), (ECF No. 88); (D) Defendants' Motion to Exclude Plaintiff's Pretrial Exhibit 13 ("Motion in Limine No. 4"), (ECF No. 89); and (E) Plaintiff's Multipart Motion in Limine and Objections ("Plaintiff's Omnibus").  The Court addresses and disposes of each motion below.

## DISCUSSION

    **A. Motion in Limine No. 1**

Defendants argue that Plaintiff's proposed witness, aviator Nadhim Nielsen ("Nielsen"), should not be allowed to testify because his training and experience as a pilot indicates his

specialized knowledge about thrust reversers that renders him an untimely disclosed expert. (ECF No. 86 at PageID 1285–88.) Plaintiff responds that Nielsen should be allowed to testify as a lay witness under Federal Rule of Evidence 602 on four fronts: (1) "his personal knowledge of flying that aircraft with the thrust reverser before the Incident," (2) "observation as to the impact of Defendants' air stair to that thrust reverser (with Mr. Nielsen being on the plane during the impact)," (3) "ferry flight with the temporarily bandaged thrust reverser," and (4) "the use (and reasons therefor) of the thrust reverser during those flights, among other things." (ECF No. 100 at PageID 1398.)

Federal Rule of Evidence 701 provides that admissible lay opinion testimony must be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "[L]ay testimony 'results from a process of reasoning familiar in everyday life,' whereas 'an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Indeed, lay "[w]itnesses who perform after-the-fact investigations have typically not been allowed to apply specialized knowledge when giving lay testimony." *Goldman v. Healthcare Mgmt. Sys.*, No. 1:05-cv-035, 2008 U.S. Dist. LEXIS 45614, at *12 (W.D. Mich. 2008) (quoting *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006)).

Moreover, "[t]he requirement that a lay opinion be rationally based on the witness' perception requires that the witness have firsthand knowledge of the factual predicates that form the basis for the opinion." *Gov't of Virgin Is. v. Knight*, 989 F.2d 619, 629 (3d Cir. 1993); *see United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) ("[A] lay opinion must be

2

rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation."). "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also Totman v. Louisville Jefferson Cty. Metro Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010) (a lay witness' "speculation is not admissible evidence").

Defendants aptly identify several bases in Nielsen's deposition transcript that could qualify him as an expert. For example, Nielsen explained that he "completed all . . . aviation degrees and licenses," holds a gold-seal flight instructor certificate, holds a ground instructor certificate, and has "10 type ratings," which qualifies him to examine ten different aircraft models, and has accrued "almost 14,000 hours" of flight time. (ECF No. 86 at PageID 1285–86.) The deposition testimony also reflects that Nielsen has considerable knowledge about primary and secondary flight controls, including thrust reversers and their function. (*Id.* at PageID 1287–88.) The foregoing suggests that Nielsen certainly has the qualifications and specialized knowledge, based on his training and experience, to provide expert testimony had Plaintiff retained him for that purpose.

But Plaintiff retained Nielsen as a *lay witness* under Federal Rules of Evidence 602 and 701, *not* to provide expert testimony under Rule 702. (ECF No. 100 at PageID 1398.) The Sixth Circuit has recognized that a witness's otherwise expert qualifications do not disqualify him from offering lay opinion testimony so long as such testimony does not "rely on . . . specialized training" and instead "relies on . . . personal knowledge" about a particular event. *United States v. Kilpatrick*, 798 F.3d 365, 384 (6th Cir. 2015) (stating that when a case agent, despite a professional law enforcement background, "relies on his or her personal knowledge of a particular investigation, the agent's opinion may be lay opinion testimony under Rule 701."); *United States v. Wells*, 211 F.3d 988 (6th Cir. 2000) (physicians may testify as lay witnesses despite being

3

otherwise qualified as expert witnesses).[1]  Put differently, although individuals with a professional background may be called as lay witnesses to share personal opinions drawn from firsthand observation of the facts, they may not provide testimony derived from "specialized knowledge." *See, e.g.*, *United States v. Lang*, 717 F. App'x 523, 537 (6th Cir. 2017) (physician testifying as a lay witness properly excluded for testifying about whether prescriptions were legitimately issued).

Here, as both parties acknowledged at the June 21, 2022 pretrial conference, Nielsen's aviation background does not preclude him from providing lay opinion testimony about matters he personally observed related to the underlying incident.  However, he may *not* testify about anything in the case that requires specialized knowledge (*e.g.*, pilot's standard of care).  *See* Fed. R. Evid. 701(c).  Consequently, Nielsen may testify about (1) "his personal knowledge of flying that aircraft with the thrust reverser before the Incident," (2) "observation as to the impact of Defendants' air stair to that thrust reverser (with Mr. Nielsen being on the plane during the impact)," and (3) "ferry flight with the temporarily bandaged thrust reverser."  (ECF No. 100 at PageID 1398.)  The Court finds that Nielsen's observations adduced from operating the aircraft, before and after the incident, and impact of the air stair collision from his vantage on the aircraft during the collision fall squarely within the scope of what the courts consider personal knowledge. *See Wells*, 211 F.2d at 998 (doctor not considered an expert if his testimony relies on observations

---

[1] Other circuits have affirmed this very principle.  *See Richardson v. Consol. Rail Corp.*, 17 F.3d 213, 218 (7th Cir. 1994) (stating that doctor is not an expert if his testimony is based on observations made in course of treatment, not acquired for purposes of trial, and based on personal knowledge); *Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 233 (D.C. Cir. 1991) (holding that a broker with specialized knowledge may offer opinion as lay witness if he had personal knowledge of the facts)); *Teen-Ed v. Kimball Int'l*, 620 F.2d 399, 402–03 (3d Cir. 1980) (permitting a lay opinion from the plaintiff's accountant and bookkeeper, even though he might have otherwise qualified as an expert).

made in course of treatment, not acquired for purposes of trial, and based on personal knowledge). After all, "lay testimony 'results from a process of reasoning familiar in everyday life,' whereas 'an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). The proposed testimony from Nielsen is closer to lay witness testimony than expert testimony because it relies on Nielsen's everyday reasoned comparison about how the aircraft handled in flight before and after the incident as well as his personal observation of the air stair collision from his position on the aircraft at the time it occurred.

However, Nielsen may *not* testify about (4) "the use (and reasons therefor) of the thrust reverser during those flights, among other things" for two reasons. (ECF No. 100 at PageID 1398.) First, knowledge about the use, function, and reasons for thrust reversers requires a process of reasoning mastered by aviators and unknown to individuals in everyday life. *See, e.g.*, *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 219 F.R.D. 587, 590 (W.D. Tenn. 2004); *United States v. Lang*, 717 F. App'x 523, 537 (6th Cir. 2017) (physician testifying as a lay witness properly excluded for testifying about whether prescriptions were legitimately issued). To explain how thrust reversers work, functionally and mechanically, clearly requires specialized knowledge about the aircraft and its aerodynamics that people do not encounter in everyday life. Second, the Court remains unclear as to which "other things" Plaintiff would ask Nielsen to testify about and declines to speculate about whether to allow testimony that it does not know. Therefore, Motion in Limine No. 1 is **DENIED IN PART** regarding grounds (1), (2), and (3) for Nielsen's testimony and **GRANTED IN PART** regarding (4).

B. **Plaintiff's Expert Request**

At the June 21, 2022 pretrial conference, Plaintiff's counsel requested permission for Plaintiff's expert, David Crick ("Crick"), to be present in the courtroom during the reading of Defendants' expert deposition, provided by Ken Dufour ("Dufour"). After Dufour was retained as an expert in this case, he shared that he recently underwent a surgery put him at greater risk of contracting COVID-19. (ECF No. 93-1 at PageID 1346.) He shared with the Court via sworn declaration in January that "[t]raveling to Memphis, staying in a hotel, eating in a restaurant, and appearing in-person for trial in this matter would require [him to] compromise the COVID-19 health and safety protocols that [his] treating physicians have advised . . ." and stressed that "***any*** exposure to COVID-19 would likely be fatal" despite him being fully vaccinated against the virus. (*Id.* at PageID 1346.) Consequently, to accommodate Dufour and to allow the parties to take his deposition, the Court reset trial to April 18, 2022. (ECF No. 98.) Due to a scheduling conflict that subsequently arose with the Court's calendar, the Court reset trial once again to its current date: June 27, 2022. (ECF No. 99.) Defendants firmly objected at the pretrial conference to allowing Crick to listen to the reading of Dufour's deposition testimony because Dufour will not be present to listen to Crick's testimony. They prefer the Court sequester Crick because Dufour will not have an opportunity to rebut his testimony after hearing it due to COVID-19—a circumstance Defense counsel correctly describes not of his making.

"A district court may, upon request from either party or of its own accord, 'order witnesses excluded so that they cannot hear the testimony of other witnesses.'" *United States v. Baird*, 403 F. App'x 57, 65 (6th Cir. 2010) (quoting Fed. R. Evid. 615). "Even when a party asks that a witness be excluded, the district court retains discretion to deny the request." *Id.* (citing *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003). However, "there is 'little, if any, reason

6

for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case.'" *Allstate Ins. Co. v. Papanek*, No. 3:15-cv-240, 2020 WL 246418, at *23 (S.D. Ohio 2020) (quoting *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629 (6th Cir. 1978). To the contrary, the Sixth Circuit has explained, "the presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be *beneficial*, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves . . . ." *Morvant*, 570 F.3d at 629–30 (emphasis added). Although Federal Rule of Evidence 615 provides "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony," it provides an exception for any witness "whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(c). Indeed, "an expert giving opinion testimony based on the testimony of other[s] is a 'classic example' of the Rule 615(c) exception.'" *Papanek*, 2020 WL 246418, at *23 (quoting *United States v. Reynolds*, 534 F. App'x 347, 365 (6th Cir. 2013)).

Here, this "classic example" exists. *Id.* Plaintiff retained Crick to provide *expert* testimony about damages calculations for the aircraft at issue and his testimony is therefore "essential to presenting" Plaintiff's claim.[2] Fed. R. Evid. 615(c). Accordingly, allowing Crick to remain in the courtroom during the presentation of Dufour's deposition is "hardly suspect" under the

---

[2] The legal threshold for this conclusion is low. The Sixth Circuit has explained that "where a fair showing has been made that the expert witness is in fact required for the management of the case, and this is made clear to the trial court, we believe that the trial court is bound to accept any reasonable, substantiated representation to this effect by counsel." *Morvant*, 570 F.2d at 630. Here, the *lone* issue the parties have yet to resolve is compensatory damages and Crick's testimony will be the only expert testimony presented by Plaintiff on this question. Plaintiff's counsel also reasonably previewed the necessity of Crick's testimony during the pretrial conference and the Court therefore concludes that such testimony fits comfortably within the ambit of Rule 615(c).

circumstances. *United States v. Mohney*, 949 F.2d 1397, 1404 (6th Cir. 1991). While certainly true that Defendants do not bear direct responsibility for COVID-19, let alone the unfortunate consequences it inflicted on Dufour's travel liberties, the situation they find themselves in at this juncture may be disappointing albeit unsurprising. Defendants, like everyone involved in this matter, have known since January 2022 that Dufour would be unable and unwilling to appear in person for trial. During the last five months, Defendants did nothing to remedy the very real possibility that they likely would not have an expert witness physically present in the courtroom (a privilege to which they have always been entitled). For example, Defendants could have taken several remedial actions: (1) attempt to secure another expert who could appear in person and rely on Dufour's reports as permitted under Fed. R. Evid. 703; (2) work with the case manager to facilitate Dufour's virtual presence in the courtroom via Microsoft Teams Meeting or teleconference; or (3) file a motion at any time during last five months that articulated specific written grounds as to why Crick should be sequestered in Dufour's absence.

At this late juncture, the Court notes that both parties have *always* been entitled to have essential witnesses present in the courtroom because their presence is "beneficial" insofar as it renders them "more likely to base [their] expert opinion[s] on a more accurate understanding of the testimony as it evolves." *Morvant*, 570 F.3d at 629–30. Though it is unfortunate that Dufour will be unable to attend trial in person, his COVID-19 concerns, while serious, were known months in advance, preceded him being deposed again, and thus do not, in the Court's discretion, warrant sequestering Plaintiff's expert now.[3] Therefore, Plaintiff's Expert Request is **GRANTED**; Crick

---

[3] The parties agreed at the June 21, 2022 pretrial conference that Dufour's deposition transcript will be read into the record by counsel. At this time, given this new approach, the Court does not see any reason why Dufour would need to appear in court via videoconference (though he is certainly welcome to). Therefore, Defendants' Motion for Kenneth Dufour to Appear at Trial

will be welcome in the courtroom throughout the trial, including while counsel present Dufour's deposition testimony.

### C. Motion in Limine No. 3

Defendants filed Motion in Limine No. 3 to exclude Plaintiff's Exhibits 29–34. (ECF No. 88 at PageID 1297.) Plaintiff's counsel clarified at the pretrial conference that Exhibits 29, 30, 33, and 34 were not used and will not be used. Thus, Motion in Limine No. 3 is **DENIED** with respect to these exhibits and the Court need only consider Exhibits 31 and 32.

Exhibits 31 and 32 are appraisal reports by Dufour issued on September 26, 2017, and November 13, 2017, respectively. (ECF No. 88 at PageID 1298.) Defendants argue that Plaintiff should not be allowed to use these reports at trial for *any* purpose, including impeachment, under Federal Rules of Evidence 401 and 403 "because none of Mr. Dufour's prior cases are sufficiently factually comparable to be relevant to the credibility of Mr. Dufour's opinions specific to this case" and "would devolve the trial into a series of mini-trials on a marginally relevant topic." (*Id.*) They further argue that "to the extent Plaintiff attempts to impeach Mr. Dufour's veracity, his prior reports and testimony constitute[] extrinsic materials on a collateral matter, which run afoul of Rule 608(b)." (*Id.*) Plaintiff responds that it would only use Exhibits 31 and 32 for impeachment purposes and not to prove diminution in value. (ECF No. 100 at PageID 1400.)

Here, Federal Rule of Evidence Rule 608(b) addresses whether specific instances of *conduct* may undermine a witness's character for truthfulness and not, as would be proper under Rule 16(b), whether a witness may be impeached by a prior inconsistent *statement*. The Sixth Circuit has recognized this distinction, *United States v. Craig*, 953 F.3d 898, 904 (6th Cir. 2020),

---

Remotely by Videoconference ("Motion for Remote Appearance") is **DENIED WITHOUT PREJUDICE**. (ECF No. 93.)

and the Court need not analyze it further except to note that: (1) Dufour's prior report is not a prior specific instance of conduct and (2) Exhibits 31 and 32 are admissible because Dufour had "an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." Fed. R. Civ. P. 613(b). *See* Dufour Dep. at Page 111:22–115:7. The fact that Plaintiff would only use Exhibits 31 and 32 for impeachment purposes and not to prove diminution in value to the aircraft renders unlikely that the Defendants' concern about wasting the Court's time with mini-trials on collateral issues would come to fruition. Therefore, based on the foregoing, Motion in Limine No. 3 is **DENIED**.

### D. Motion in Limine No. 4

Defendants argue that Plaintiff's Pretrial Exhibit 13, "a February 6, 2019 report on United States Aircraft Insurance Group ("USAIG") (Defendants' insurance carrier) letterhead and is addressed to Brad Hernke, the USAIG adjuster who handled Plaintiff's pre-litigation claim," should be excluded. (ECF No. 89 at PageID 1302.) Defendants explain that Exhibit 13 ("USAIG Report") "was produced by Karl Florian," who Defendants retained as an expert witness on "aviation maintenance and repairs and aircraft operation," during his deposition. (*Id.*) Defendants offer four legal bases to exclude the USAIG Report: (1) it has not been authenticated under Fed. R. Evid. 901; (2) it constitutes hearsay under Fed. R. Evid. 801; (3) Plaintiff has not laid sufficient foundation under Fed. R. Evid. 701; and (4) the "uncertainties surrounding the [Report's] origins" mean it "likely violates" Fed. R. Evid. 403 because it's "questionable relevance . . . substantially outweighs . . . the unfair prejudice to Defendants."[4] (ECF No. 89 at PageID 1303.)

---

[4] Presumably, this latter point includes a typographical error. Defendants likely meant to argue that risk of unfair prejudice substantially outweighs the USAIG Report's probative value. The Court will construe the argument in this way.

10

Plaintiff responds that because the USAIG Report "appears on USAIG letterhead and was disclosed to [Dufour and Florian] by USAIG, it is sufficient proof within the proportional needs of the case to establish that the author is USAIG." (ECF No. 100 at PageID 1401 n.1.)  It offers five separate evidentiary bases that, in its view, warrant admission over Defendants' hearsay objection: (1) statement by a party opponent under Fed. R. Evid. 801(d)(2); (2) statement against interest under Fed. R. Evid. 804(b)(3); (3) recorded recollection under Fed. R. Evid. 803(5); (4) statements in documents that affect an interest in property under Fed. R. Evid. 803(15); and (5) the residual exception under Fed. R. Evid. 807.  The Court will address Plaintiff's proposed bases for admission where it analyzes Defendants' hearsay objection.

      i.    *Rule 901: Authenticity*

As discussed at the June 21, 2022 pretrial conference, the Report's **authenticity** may depend on the proof at trial and the parties may re-raise *specific* objections under Fed. R. Evid. 901 at that juncture.  The Court need not speculate about authenticity when, at this stage, neither party has attempted to authenticate the Report with specific evidence, let alone any—yet—that is "sufficient to support a finding that the item is what the proponent says it is."[5]  Fed. R. Evid. 901(a).

      ii.    *Rule 801: Hearsay*

To rebut Defendants' **hearsay** argument, which alleges the USAIG Report is being offered by an unidentified out of court declarant for the truth of the matter regarding the parties' dispute over "significant" versus "minor" damage, Plaintiff offers five bases for admission.  First, Plaintiff argues that the USAIG Report is a statement by an opposing party under Fed. R. Evid. 801(d)(2)

---

[5] This is *not* to say that authenticity cannot be established for the Report.  Indeed, the Federal Rules of Evidence contemplate authentication through a panoply of means, including, most commonly, testimony by a witness with knowledge.  Fed. R. Evid. 901(b)(1).

11

but does not develop this argument under the language of that Rule. For example, beyond the conclusory assertion that the USAIG Report is not hearsay, Plaintiff has not argued that the statement "was made by a person whom the party authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C), or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). But even if Plaintiff *had* made these arguments, they would be unavailing for a couple of reasons: (a) nothing in the record indicates Defendants "authorized" the (yet unknown) individual author at USAIG to make the findings in questioned Report—even if Dufour or another expert, Karl Florian, did (also unclear)—and (b) USAIG, as a third party insurer, is neither an agent acting at the direction of Defendants or an employee beholden to Defendants' instructional bidding.[6] Rather insurers generally conduct independent analyses and provide their conclusions to the insured; the insured does not necessarily control the operation of the insurer, but rather provides payment for insurance. Nothing in the record indicates a different relationship between Defendants and USAIG here. Consequently, an agency theory, even if Plaintiff had argued it, also falls well short of what would be required to admit the Report under the plain language of Rules 801(d)(2)(C) and (D).

Second, Plaintiff alleges the USAIG Report qualifies as a statement against interest under Rule 804(b)(3) but does not develop an argument under the text of the Rule. (ECF No. 100 at PageID 1402.) To qualify as a statement against interest, the Report would have to be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid.

---

[6] While generally true that, in Nevada, "an independent insurance agent is considered the agent of the insured, not the insurer," *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599 (1992), here the Court cannot determine from the pleadings whether the USAIG Report was authored by one agent or several, or by an agent at all and instead by a third party. Absent further clarity, the Court will not render a decision based largely on speculation. Therefore, Rule 802(d)(2)(D) does not, at this juncture, permit admissibility here.

804(b)(3)(B).  Here, Plaintiff has not presented any corroboration for the USAIG Report in its Response, which renders its argument under this rule incomplete.  *See Coal Sys. Corp. v. Harbour*, No. 1:15-cv-470, 2016 WL 4480334, at *20 n.14 (S.D. Ohio 2016) ("Plaintiffs assert, without discussion, that such statements are admissible under Rule 803(6) (records of regularly conducted activity); Rule 803(8) (public records); Rule 803(14) (records of documents that affect an interest in property); Rule 803(15) (statements in documents that affect and interest in property); and Rule 807 (residuary exception).  *Without any substantive argument, Plaintiffs do not carry their burden* to demonstrate admissibility by way of a hearsay exception.") (emphasis added).  Therefore, without more, the Court cannot conclude that the Report should be admitted as a statement against interest under Rule 804(b)(3).

Third, Plaintiff argues that the USAIG Report should be admitted as a recorded recollection under Fed. R. Evid. 803(5).  This exception to Rule 801 permits courts to admit "a record that:

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; ***and***
> (C) accurately reflects the witness's knowledge.

Fed. R. Evid. 803(5).  Initially, Rule 803(5)(a) requires an exhibit's proponent to identify "the witness" who will testify about the document, but Plaintiff has not done so.  While Dufour does address the USAIG Report in his deposition and concedes it is "possible" that he discussed it with Florian, another expert,  Dufour Dep. at 115:17–119:16, it is well-established that expert witnesses may consider a wide berth of materials to render an opinion—including those that would not otherwise be admissible.  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or *personally observed*.  If experts in the

13

particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.") (emphasis added).

However, the parties agree that Dufour did not write the USAIG Report and had little knowledge about it, as reflected in his deposition testimony. Even when Plaintiff's counsel sought to refresh Dufour's recollection with the Report, this effort did not suggest Dufour "made or adopted" the Report—a prerequisite under Rule 803(5)(d)(A). For example:

> Question: So, when you and Mr. Florian were having this discussion by email marked as Exhibit 7, this USAIG narrative report that's marked as Exhibit 13 was being referenced, correct?
>
> Answer: It appears that way, yes.
>
> Question: So you and Mr. Florian did discuss this document marked as Exhibit 13 during work related to the Challenger 350, correct?
>
> Answer: That's possible. Again, I do not recall doing that.

*See* Dufour Dep. at 119:1–16. Based on the foregoing, Rule 803(5) provides an insufficient basis to admit the USAIG Report because Dufour's deposition testimony indicates that it was not at any time "*made* or *adopted*" by the witness, "fresh in the witness's memory," or an accurate reflection of the "witness's knowledge" at an earlier time. Fed. R. Evid. 803(5) (emphasis added). Therefore, Plaintiff's Rule 803(5) basis is unconvincing.

<u>Fourth</u>, Plaintiff argues that the Report is admissible under Fed. R. Evid. 803(15) as a statement in a document affecting an interest in property.[7] But courts apply this Rule to determine disputes over property *ownership*, not to resolve damages questions. *See, e.g.*, *United States v.*

---

[7] "The requirements for admissibility under Rule 803(15) are that the document is authenticated and trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement." *Silverstein v. Chase*, 260 F.3d 142, 149 (2d Cir. 2001). Here, as previously discussed, the USAIG Report has not yet been authenticated, which presents yet another problem with admitting it under Rule 803(15).

*Miller*, No. 07-11700, 2009 U.S. Dist. LEXIS 97239, at *1 (E.D. Mich. 2009) (handwritten notes on deed admissible under Fed. R. Evid. 803(15) to show title passed to taxpayer). Here, that Plaintiff owns the damaged aircraft is not at issue and the USAIG Report has not been tendered to prove ownership. Therefore, Fed. R. Evid. 803(15) would not be a proper vehicle to admit the Report.

Fifth, and finally, Plaintiff asserts that the Report should be admitted under the residual exception enumerated in Fed. R. Evid. 807. Admissibility under Rule 807 cannot be granted for three reasons. Initially, Plaintiff has made no argument about whether the Report has "sufficient guarantees of trustworthiness" upon consideration of the totality of the circumstances under Fed. R. Evid. 807(a)(1).[8] Next, the Court has not been presented with any evidence to corroborate the report under Rule 807(a)(1). Lastly, and critically, Plaintiff has not shown that the USAIG Report "is more probative on the point for which it is offered than any other evidence that [Plaintiff] can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2). These deficiencies in Plaintiff's argument under Rule 807 must also be evaluated considering the "restrictive view of the residual exception under Rule 807" taken by courts in this Circuit. *Bailey v. United States*, 115 F. Supp. 3d 882, 891 (N.D. Ohio 2015); *United States v. Thurman*, 915 F. Supp. 2d 836, 868–69 (W.D. Ky. 2012) (Rule 807 employed "very rarely, and only in exceptional circumstances); *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 840 (W.D. Ky. 2017). Therefore, the residual exception also does not provide a proper basis to admit the Report.

---

[8] The Sixth Circuit has recognized that, "[t]he absence of such corroborating circumstances . . . indicates that the . . . statements lack circumstantial guarantees of trustworthiness . . . ." *United States v. Hunt*, 521 F.3d 636, 644 (6th Cir. 2008). Similarly, the absence of a corroboration weighs against finding sufficient guarantees of trustworthiness as to the USAIG Report at issue here.

The Court will address Defendants' arguments under Federal Rules of Evidence 701 and 403 together. As to proper foundation for the USAIG Report, the Sixth Circuit has recognized that "[l]aying a foundation for a particular piece of evidence often means 'authenticating' that evidence. Authenticity is established by 'evidence sufficient to support a finding that the item is what its proponent claims it is.'" *Patterson v. City of Akron*, 619 F. App'x 462, 480 (6th Cir. 2015) (quoting Fed. R. Evid. 901(a)). Thus, the Court's earlier analysis about authentication cross-applies here, specifically insofar as there will be an opportunity to authenticate the USAIG Report at trial through the appropriate means set forth in Rule 901(b).

Defendants' Rule 403 argument is unpersuasive because the risk of unfair prejudice is markedly low, even irrelevant, in a bench trial. "Like Federal Rule of Evidence 702, Rule 403 has no application where the court sits as both trier of fact and law. In the context of a bench trial, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and 'useless procedure.'" *Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 620 (S.D. Ohio 2008) (quoting *United States v. Hall*, No. 98-6421, 2000 WL 32010, *2 (6th Cir. 2000)); *see, e.g.*, *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (finding court should not exclude evidence under Rule 403 in bench trial for unfair prejudice); *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (holding that unfair prejudice prong of Rule 403 "has no logical application to bench trials"). Therefore, although Defendants' arguments to exclude the USAIG Report fall short under Rule 403, Plaintiff's bases for admission do not overcome Defendants' hearsay objection and Motion in Limine No. 4 is **GRANTED**.

### E. Plaintiff's Omnibus

Plaintiff has moved in limine to exclude four of Defendants' Exhibits, listed for clarity in the following four categories: (1) Exhibit 14, labeled a "summary of factors considered by Ken

16

Dufour"; (2) Exhibits 21 and 22, labeled "expert reports" of Dufour and Florian; (3) Exhibit 27, labeled "Dufour's work file"; and (4) all objections previously raised in Plaintiff's Motion to Exclude Testimony from Kenneth Dufour (ECF No. 54.)  The parties informed the Court at the pretrial conference that categories (2) and (3) have been rendered moot because the parties agreed not to introduce expert reports[9] and on which portions of Dufour's work product would be admissible.  Category (4) has been rendered moot by the Court's Order, docketed on January 20, 2022.  (ECF No. 94.)  Thus, the Court need only decide whether Defendants' Exhibit 14 (category (1)) should be admitted.

Plaintiff describes Exhibit 14 as a "summary of factors considered by Ken Dufour during his analysis" that "does not presently exist." (ECF No. 100 at PageID 1305.)  Citing *Engebretson*, Plaintiff asserts that Federal Rules of Evidence 702 and 703 render expert reports—including any summaries yet to be created—inadmissible and that admission would be "highly prejudicial to Radair."  (*Id.*)  At the pretrial conference, Defendants explained that they intended to reference Exhibit 14 in their closing and likened it to having a witness scribble notes on a chalkboard without entering that writing into evidence (simply for explanatory purposes).

Here, the Court begins by reiterating that, unlike in a jury trial, the Rule 403 risk of unfair prejudice carries little weight in a bench trial.  *See Miller*, 709 F. Supp. 2d at 620.  Next, the Court finds Defendants' statement that they intend use Exhibit 14 for explanatory purposes in closing, but *not enter it into evidence*, significant because it seems to resolve Plaintiff's primary concern

---

[9] A wise decision. "Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion.  Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994).

that it would be prejudiced if Exhibit 14 were entered into evidence. (ECF No. 100 at PageID 1306.) Therefore, Plaintiff's objection is **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, Motion in Limine No. 1, (ECF No. 86), is **DENIED IN PART** as to grounds (1), (2), and (3) and **GRANTED IN PART** regarding (4); Plaintiff's Expert Request is **GRANTED**; the Motion for Remote Appearance, (ECF No. 93), is **DENIED WITHOUT PREJUDICE**; Motion in Limine No. 3, (ECF No. 88), is **DENIED**; Motion in Limine No. 4, (ECF No. 89), is **GRANTED**; and Plaintiff's Omnibus is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 27th day of June, 2022.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE